1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Anthony Barnes (Bar No. 199048)
Jason Flanders ((Bar No. 238007)
AQUA TERRA AERIS LAW GROUP LLP
828 San Pablo Ave., Ste. 115B
Albany, CA 94706
Telephone: (415) 326-3173
Email: amb@atalawgroup.com

*Attorneys for Plaintiff*
HUMBOLDT BAYKEEPER

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

HUMBOLDT BAYKEEPER, a California non-profit association,

     Plaintiff,

 v.

HUMBOLDT WASTE MANAGEMENT AUTHORITY, a Joint Powers Authority

     Defendants.

Case No. 3:17-cv-02301-JD

**STIPULATION TO DISMISS PLAINTIFF'S CLAIMS WITH PREJUDICE, RETAINING JURISDICTION OVER SETTLEMENT; [PROPOSED] ORDER GRANTING DISMISSAL OF CLAIMS WITH PREJUDICE, RETAINING JURISDICTION OVER SETTLEMENT**

**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq.)**

**Judge: Hon. James Donato**

**PLEASE TAKE NOTICE THAT:**

WHEREAS on February 24, 2017 Plaintiff Humboldt Baykeeper ("Plaintiff" or "Baykeeper") provided Humboldt Waste Management Authority ("Defendant" or "HWMA") with a Notice of Violations and Intent to File Suit ("Notice") under Clean Water Act § 505, 33 U.S.C. § 1365. (collectively, "the Parties")

WHEREAS, on April 2017, Baykeeper filed its Complaint against Defendant in this Court, which incorporated by reference all of the allegations contained in Plaintiff's Notice.

1    WHEREAS, Baykeeper and HWMA (the "settling parties"), through their authorized

2  representatives and without either adjudication of Baykeeper's claims or admission by HWMA,

3  of any alleged violation or other wrongdoing, have chosen to resolve in full by way of settlement

4  the allegations of Baykeeper has set forth in the Notice and Complaint, thereby avoiding the costs

5  and uncertainties of further litigation. A copy of the Settlement Agreement and Mutual Release of

6  Claims ("Settlement Agreement") entered into by and between Baykeeper and HWMA, is

7  attached hereto as Exhibit A and fully incorporated by reference.

8    WHEREAS, on November 15, 2017, Plaintiff filed a Notice of Settlement and requested

9  the Court not enter any order regarding the Settlement Agreement until a mandatory period for

10 comment by the United States had passed pursuant to United States Code, title 33, section

11 1365(c)(3) and Code of Federal Regulations, title 40, section 135.5 (ECF #37); and

12   WHEREAS, on December 8, 2017 Plaintiff filed a Notice of Commencement of 45-Day

13 Review Period, which advised the Court that the United States had acknowledged receipt of the

14 Settlement Agreement and would notify the Court of any objections to the Settlement Agreement

15 by January 8, 2018 (ECF #38); and

16   WHEREAS, Plaintiff submitted the Settlement Agreement via certified mail, return

17 receipt requested, to the U.S. EPA and the U.S. Department of Justice (the "federal

18 agencies") for a 45-day statutory review period, consistent with 33 U.S.C. § 1365(c) and 40

19 C.F.R. § 135.5, and as noted directly above, that review period has completed. The federal

20 agencies have submitted correspondence to the Court on January 8, 2018, indicating that they

21 have no objection to the terms of the Settlement Agreement.

22

23   NOW THEREFORE, IT IS HEREBY STIPULATED and agreed to that the settling

24 parties request an order from this Court (1) dismissing with prejudice Baykeeper's claims as to

25 HWMA, as set forth in the Notice and Complaint, and (2) concurrently retaining jurisdiction over

26 this matter for purposes of dispute resolution and enforcement of the Settlement Agreement.

27

28

1

DATED: January 9, 2018

2

AQUA TERRA AERIS LAW GROUP LLP

3

4

5

By:  /s/ Anthony Barnes

Anthony Barnes
Attorneys for Plaintiff
HUMBOLDT BAYKEEPER

6

7

DOWNEY BRAND LLP

8

DATED:  January 9, 2018

By:   /s/ Melissa A. Thorme

9

Melissa A. Thorme
Attorney for Defendant
HUMBOLDT WASTE
MANAGEMENT AUTHORITY

10

11

12

13

14

**ECF ATTESTATION**

15

I, Anthony Barnes, hereby attest that Melissa A. Thorme concurs in this filing. This

16

attestation is made pursuant to Civil Local Rule 5-1.

17

18

By:  /s/ Anthony Barnes

Anthony Barnes
Attorney for Plaintiff
HUMBOLDT BAYKEEPER

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] ORDER**

Good cause appearing, and the parties having stipulated and agreed, IT IS HEREBY

ORDERED that pursuant to Federal Rule of Civil Procedure 41(a)(2), HUMBOLDT

BAYKEEPER's claims as to HUMBOLDT WASTE MANAGEMENT AUTHORITY, as set

forth in the Notice and Complaint, are dismissed with prejudice, and the Court shall retain

jurisdiction over this matter for purposes dispute resolution and enforcement of the Settlement

Agreement, attached hereto as Exhibit A and fully incorporated by reference herein.

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: __February 5___, 2018

_____

**HONORABLE JAMES DONATO**

# EXHIBIT A

DOWNEY BRAND LLP
MELISSA A. THORME (Bar No. 151278)
621 Capitol Mall, 18th Floor
Sacramento, CA  95814-4731
Telephone:     (916) 444-1000
Facsimile:      (916) 444-2100
mthorme@downeybrand.com

NANCY DIAMOND (Bar No. 130963)
Law Office of Nancy Diamond
822 G St #3
Arcata, CA 95521
Telephone:     (707) 826-8540
Facsimile:      (707) 826-8541
ndiamond@ndiamondlaw.com

*Attorneys for Defendant*
Humboldt Waste Management Authority

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUMBOLDT BAYKEEPER, | **Civil Case No.: 3:17-cv-02301-JD** |
| Plaintiff, | **SETTLEMENT AGREEMENT** |
| v. | **(Federal Water Pollution Control Act, 33 U.S.C.  §1251 et seq.)** |
| HUMBOLDT WASTE MANAGEMENT AUTHORITY, a Joint Powers Authority | |
| Defendant. | |

1

## SETTLEMENT AGREEMENT

2  The following Settlement Agreement ("Agreement") is entered into by and between Plaintiff
3  Humboldt Baykeeper and Defendant Humboldt Waste Management Authority. The entities
4  entering into this Agreement are collectively referred to as "the Parties."

5  **WHEREAS**, Humboldt Baykeeper ("Baykeeper") is an unincorporated non-profit
6  association, dedicated to the protection, enhancement, and restoration of Humboldt Bay, the
7  Humboldt Bay Watershed, and the water bodies within the Humboldt Bay Watershed.

8  **WHEREAS**, Humboldt Waste Management Authority ("HWMA") is a Joint Powers
9  Authority formed under the laws of the State of California;

10  **WHEREAS**, storm water discharges associated with industrial activity at the Facility are
11  regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit
12  No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-57-DWQ
13  ("Industrial Storm Water Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et*
14  *seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

15  **WHEREAS**, HWMA is the owner and operator of a municipal solid waste and green materials
16  recycling, diversion, and transfer facility in Humboldt County, California, called the Hawthorne Street
17  Transfer Station, located at 1059 W. Hawthorne Street, Eureka, CA 95501 ("Facility"). HWMA has had
18  coverage under the 1997 and 2014 Industrial Storm Water Permits with the Waste Discharge
19  Identification ("WDID") number of 1 12I016073 and Standard Industrial Classification ("SIC") Code
20  4212, Local Trucking without Storage;

21  **WHEREAS**, industrial activities at the Facility include (1) receiving, loading, and transferring
22  municipal solid waste for off-site disposal at a permitted landfill, (2) receiving, sorting, baling, and
23  transporting recyclables off site for re-use, (3) receiving, loading and transporting wood and green
24  materials to other locations for beneficial re-use, and (4) activities incidental to transfer station
25  operations, such as maintenance and education;

26  **WHEREAS**, on November 11, 2016, prior to the allegations raised in this matter, the North
27  Coast Regional Water Quality Control Board ("Regional Board") inspected the Facility, found no

28

---

SETTLEMENT AGREEMENT          2          Case No.  3:17-cv-02301-JD

violations of the Industrial Storm Water Permit, and found the "site overall in excellent condition," and Baykeeper disputes the Regional Board's conclusions;

WHEREAS, Baykeeper contends that HWMA's operations at the Facility result in industrial storm water discharges into offsite drainage swales and culverts that flow into the Palco Wetlands (also known as the Palco Marsh or Eureka Marsh), and ultimately to Humboldt Bay (collectively, the "Receiving Waters") and contends that those discharges are regulated by the Clean Water Act, Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

WHEREAS, on February 24, 2017, Baykeeper sent a letter to HWMA, the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Water Board"), the Executive Officer of the North Coast Regional Water Quality Control Board, ("Regional Board"), and the Regional Administrator of EPA Region IX, that included a notice of violations and intent to file suit ("60-Day Notice") under Section 505(b)(1)(a) of the of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), alleging violations at the Facility of the Clean Water Act and the Industrial Storm Water Permit and its previous version, Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ ("1997 Permit"). HWMA contends that Baykeeper's 60-Day Notice was received by HWMA on February 27, 2017;

WHEREAS, on April 25, 2017, the 60th day after Baykeeper mailed the 60-Day Notice, Baykeeper filed a complaint against HWMA in the United States District Court, Northern District of California ("Court") alleging HWMA is in violation of the substantive and procedural requirements of the Industrial Storm Water Permit, 1997 Permit, and the Clean Water Act ("Complaint");

WHEREAS, on October 12, 2017, Recology Humboldt County ("Recology") provided notice of its intention to vacate the neighboring site to the Facility, at 949 W Hawthorne Street (the "Recology site"), by June 30, 2018, which it currently leases from HWMA;

WHEREAS, on October 12, 2017, HWMA approved a scope of work for technical analysis of Facility expansion onto the Recology site and to draft a Master Plan for the expanded site operations, including changes to enhance storm water compliance;

WHEREAS, HWMA intends to expand Facility operations onto the Recology site by July 1, 2018;

**WHEREAS**, HWMA denies all allegations and claims contained in the 60-Day Notice and the Complaint, reserves all procedural and substantive rights and defenses with respect to such allegations and claims, and maintains that HWMA has complied at all times with the provisions of the Industrial Storm Water Permit and the Clean Water Act or, alternatively, that there are no "ongoing and continuous" violations of the Industrial Storm Water Permit or the Clean Water Act;

**WHEREAS**, the Parties have agreed that it is in their mutual interest to resolve in full Baykeeper's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and uncertainties of further litigation;

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE PARTIES, AS FOLLOWS:**

**EFFECTIVE DATE AND TERM OF AGREEMENT**

**1.** **Effective Date:** The "Effective Date" shall mean the last day for the Federal Agencies to comment on the Agreement  (i.e., the forty-fifth (45th) day following the Federal Agencies' receipt of the Agreement), or the date on which the Federal Agencies provide notice that no further review is required, whichever occurs earlier.

**2.** **Term:** The Term of this Agreement shall run from the Effective Date until July 1, 2020 ("Termination Date"), unless dispute resolution has been invoked or is pending regarding an Action Plan required by Paragraph 5, in which case the Term will end upon the completion of the dispute resolution process.

**COMMITMENTS OF BAYKEEPER**

**3.** **Notice of Settlement and Statutory Agency Review; Public Records Act**.

Within five (5) business days of the mutual execution of this Agreement, Baykeeper shall do all of the following:

**a.** Submit this Agreement to the United States Department of Justice ("DOJ") for the statutory 45-day agency review period set forth in 33 U.S.C. §1365(c). In the event that the DOJ objects to this Agreement, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the DOJ within thirty (30) days.

**b.** Submit a Notice of Settlement to the federal District Court.

c.      Send a letter to HWMA withdrawing the Baykeeper's California Public Records Act request sent by certified mail to HWMA on July 28, 2017.

4.      **Case Dismissal.**  Within seven (7) days of the Effective Date, Baykeeper shall file with the Court a Stipulation and Order, signed by both Parties, providing that:

a.      The Complaint and all claims against HWMA shall be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) (the date of entry of the Order to dismiss shall be referred to herein as the "Court Approval Date"); and

b.      The Court shall retain and have jurisdiction over the Parties with respect to disputes arising under this Agreement, which shall be attached thereto and fully incorporated by reference, through the Termination Date.  Nothing in this Agreement shall be construed as a waiver of any Party's right to appeal from an order that arises from a motion to enforce the terms of this Agreement.

**COMMITMENTS OF HWMA**

5.      **Best Available Technology Economically Achievable (BATEA)/Best Conventional Pollutant Control Technology (BCT).** Contaminants in HWMA's industrial storm water discharges shall be reduced by Best Management Practices ("BMPs") required under the Industrial Storm Water Permit and herein in this Agreement to meet BATEA/BCT requirements.  After October 1, 2019, if HWMA receives storm water sampling data demonstrating two or more exceedances of the same Parameter Concentration contained in the following Table 1 from a single outfall at the Facility in the 2019-2020 reporting year, HWMA shall provide Baykeeper with an Action Plan pursuant to the requirements of Paragraph 16.

**Table 1**

| Parameter (All metals are total recoverable) | Concentration |
|---|---|
| Copper | .0332 mg/L |
| Zinc | 0.26 mg/L |
| Lead | 0.262 mg/L |

| Aluminum | 0.75 mg/L |
|---|---|
| Iron | 1 mg/L |
| Chemical Oxygen Demand | 120 mg/L |

**6.**     **ERA Level 1 Review.**  The Facility shall prepare an ERA Level 1 Report and provide to Baykeeper by **November 15, 2017** for a 20-day review and comment prior to being submitted to the State on **January 1, 2018**.

**7.**     **ERA Level 2 Review**.  If ERA Level 2 is triggered in the 2017/2018 wet season, then by **October 1, 2018**, the Facility will prepare a draft Level 2 ERA Action Plan and provide to Baykeeper for a 20-day review and comment prior to submitting the final version to the State on January 1, 2019. In addition, on **October 1, 2019**, the Facility will prepare a draft Level 2 Technical Report and provide to Baykeeper for a 20-day review and comment before the final version is submitted to the State on **January 1, 2020**.

**8.**     **Implementation of Additional Best Management Practices:** In addition to maintaining the current BMPs at the Facility, within forty-five (45) days of the Effective Date, unless otherwise noted, HWMA shall continue, maintain, or complete implementation of the following BMPs to prevent and/or reduce pollutants in storm water discharges from the Facility consistent with the use of the BATEA and the BCT and with the applicable water quality standards ("WQS") for Palco Marsh and Humboldt Bay.

**8.1**     HWMA shall install temporary curbs or berms between the Facility and the adjacent Recology site, or an equivalent or better solution if available, designed and implemented to prevent run-on of fugitive storm water and not cause flooding or ponding issues. At such time when Recology no longer operates at this site and its lease with HWMA terminates, then this Paragraph 8.1 will no longer apply.

**8.2**     HWMA shall investigate the proper sizing for appropriate drain inlet filters, as referenced in Paragraph 8.3 below, and resize and/or replace the two Drain Inlets ("DIs") and drainage pipes at the eastern boundary with the Recology site, as needed from the DIs to the point where these DIs and drainage pipes discharge storm water, in order to: 1) allow storm water filters to be

installed in accordance with Paragraph 8.3 below, and 2) to increase storm water capacity. Should HWMA resize the DIs and/or unplug and clear the current drainage pipes, and can effectively demonstrate through testing by and an opinion from an independent third-party storm water consultant that the drainage pipes can handle sufficient volume from an 85th percentile, 24-hour storm event, as determined from local historical rainfall records, then the current or resized DIs and drainage pipes can be maintained. Any independent consultant shall be approved by both HWMA and Baykeeper, and the cost to HWMA for this consultant shall not exceed $2500.00.

**8.3**     HWMA shall install storm water filter inserts into all DIs at the Facility designed to treat storm water and reduce observed pollutants (e.g., Total Suspended Solids ("TSS"), copper, aluminum, zinc, iron, and Chemical Oxygen Demand ("COD")). Replacement or cleaning of DI filter media shall be implemented on a regular schedule in accordance with the manufacturer's defined useful lifespan of the product(s), but at a minimum will be replaced or cleaned prior to the start of each Wet Season.[1]

**8.4**     During the Wet Season, HWMA shall fit and install Filtrexx Envirosoxx, or equivalent media-filled wattles (not including straw wattles) designed to remove metals from storm water, around all DIs at the Facility that are not subjected to traffic. All Filtrexx fiber rolls or equivalent rolls or wattles shall be weighted down with sandbags or similar material during rain events to hold rolls or wattles in place. HWMA shall replace all Filtrexx Envirosoxx, or equivalent media-filled wattles, as frequently as necessary to be effective in accordance with the manufacturer's defined useful lifespan of the product(s) for locations requiring replacement, but at a minimum will be replaced prior to the start of each Wet Season.

**8.5**     HWMA shall explore feasible options, including relocation or providing cover, and then execute an effective BMP solution to address the green material and woody debris collection and storage area adjacent to the Universal Waste building, which is near to the DI in that area.

---

[1] The "Wet Season" includes October 1st through May 31.

**8.6**     HWMA shall implement additional housekeeping measures, including, but not limited to, a weekly sweeping program using a Vacuum Sweeper truck on all accessible paved areas of the Facility, weather permitting. To document compliance with this Paragraph, HWMA shall institute an established sweeping route map and document the schedule for sweeping occurring at the Facility with a Sweeping Log. Baykeeper shall have the right to inspect documentation related to sweeping during site inspections, and HWMA shall include all documentation related to the Sweeping Logs with the Facility's SWPPP and shall upload to SMARTS as part of any SWPPP amendments.

**8.7**     HWMA shall not conduct outdoor bin washing activities at the Facility, in order to prevent commingling of process water and storm water.

**8.8**     HWMA shall cover all open bins and containers prior to rain events to prevent open bins or containers from coming into contact with rainfall or storm water runoff at the Facility, or shall utilize bins sealed so as to not release water. Any water collected in bins will be considered a non-stormwater discharge and shall not commingle with storm water. A member of HWMA's Storm Water Pollution Prevention Team or designated individual shall inspect the entirety of the Facility at least weekly during the Wet Season, and shall take all reasonable steps to ensure that all bins or containers have lids, tarps, or covers or are not leaking water, prior to or during any rain event.

**8.9**     HWMA shall consider available alternatives for collecting representative industrial storm water samples at the western discharge point to avoid comingling with water from the Palco Marsh, and shall implement the most feasible alternative.

**8.10**    All maintenance, repair, and replacement activities relating to the storm water pollution control measures contained in this Agreement shall be recorded and described in appropriate written records to include, but not be limited to, any maintenance activities of any storm water impoundment or collection equipment and filter roll, DI filter inserts, and drain repairs and/or replacements. The written records for each Wet Season shall be kept with the written records required under the Facility's SWPPP and shall be submitted into SMARTS whenever SWPPP amendments are uploaded.

**9.     BMP Modifications.** HWMA shall not unilaterally abandon or modify any of the BMPs described above in Paragraph 8 without prior notice to Baykeeper, unless immediately required by regulation or regulatory authority. Any failure to comment on the HWMA modifications by Baykeeper shall not be deemed to constitute agreement with the proposals or be deemed to construe a waiver of any of Baykeeper's rights or remedies under this Agreement.

**10.     Visual Observations.** HWMA shall conduct visual observations at each discharge location once a week during weeks experiencing any Qualifying Storm Event ("QSE").[2]

**11.     Employee Training Program.** No later than **April 1, 2018**, HWMA will begin formal recruitment to fill a new staff position assigned to overseeing environmental and regulatory compliance. HWMA will meet and confer with Baykeeper if this position is not filled by **June 1, 2018**, to determine how to fill the position as expeditiously as possible. HWMA agrees to best efforts to fill this new position no later than **July 1, 2018**. HWMA shall also develop and implement an employee training and reporting program that includes:

**a.**     Semi-annual meetings of the Storm Water Pollution Prevention Team, prior to the start of the Wet Season (October 1), and again within the mid-term of the Wet Season, to ensure training prior to the first event and subsequent storm events as well as to ensure that the monthly Wet Season visual monitoring is properly conducted and reported in the Annual Report;[3]

**b.**     HWMA shall train all relevant employees on the BMPs included in this Agreement and the SWPPP to ensure that BMPs are implemented effectively and on schedule and structural BMPs are maintained properly. HWMA shall train individual employees on their specific responsibilities in implementing BMPs. The training must include proper handling (collection, storage and disposal) of all potential pollutant sources at the Facilities; and

**c.**     HWMA shall train all relevant employees at the Facility on the Industrial Storm Water Permit's prohibition of non-stormwater discharges, so that employees know what non-

---

[2] A QSE is a precipitation event that produces a discharge for at least one drainage area, and is preceded by 48 hours with no discharge from any drainage area. (General Permit, Fact Sheet, at 7.)
[3] The Industrial Storm Water Permit requires dischargers to submit Annual Reports no later than July 15th following each reporting year.

stormwater discharges are, that non-stormwater discharges can result from improper surface washing or dust control methods, and how to detect and prevent non-stormwater discharges.

12.     **Storm Water Pollution Prevention Plan.** No later than **May 1, 2018**, HWMA shall provide a draft amended SWPPP, including an updated site map showing future HWMA operations at the adjacent Recology site, and including BMPs designed to achieve compliance with BAT/BCT and receiving water limits, as well as the requirements of Section X.H of the Industrial Storm Water Permit. Baykeeper shall have 30 days to provide written comment on the adequacy of the SWPPP; however, Baykeeper's failure to do so shall not be deemed to constitute agreement with the draft SWPPP. HWMA shall not be obligated to implement any of Baykeeper's recommendations (subject to dispute resolution in Paragraphs 24 and 25), but shall give good faith consideration to those measures, and provide a written explanation as to why HWMA declined to implement any such changes. Upon request by Baykeeper, HWMA agrees to meet and confer in good faith regarding the contents and sufficiency of the SWPPP.

13.     **Future Storm Water Pollution Prevention Plan Amendments.** HWMA shall revise the Facility's SWPPP if there are any material changes in the Facility's operations, including, but not limited to, changes to the Facility's operation or status, storm water discharge points, or BMPs. Uploading of the SWPPP revisions to SMARTS shall occur within thirty (30) days of the changes in operations and notice shall be provided to Baykeeper on the same day as the upload pursuant to the Notice requirements of Paragraph 43 herein.

14.     **HWMA Master Plan.**

    a.     No later than **September 1, 2018**, HWMA will provide to Baykeeper a Draft Master Plan for the Facility (including HWMA operations at the adjacent Recology site), which shall include components clearly identified as designed to achieve compliance with BAT/BCT and receiving water limits. Baykeeper will have 20 days to provide written comments; however, Baykeeper's failure to do so shall not be deemed to constitute agreement with the Draft Master Plan. HWMA shall not be obligated to implement any of Baykeeper's recommendations (subject to dispute resolution in Paragraphs 24 and 25), but shall give good faith consideration to those measures, and provide a written explanation as to why HWMA declined to implement any such changes. Upon

request by Baykeeper, HWMA agrees to meet and confer in good faith regarding the contents and sufficiency of the Draft Master Plan.

**b.**        No later than **October 11, 2018**, HWMA shall present a Final Master Plan to its Board for approval. HWMA shall provide to Baykeeper contemporaneous copy of any permit application(s) submitted by HWMA to any public agency in furtherance of Master Plan implementation. HWMA shall complete full implementation of all Master Plan components identified for storm water compliance no later than **October 1, 2019**.

**15.        Sampling Frequency and Parameters.** HWMA shall collect and analyze samples from four (4) QSEs from the Facility, for all parameters identified in Table 1, at all sampling points identified the Facility's SWPPP each reporting year.

**16.        Action Plan.** HWMA agrees to submit an Action Plan if required pursuant to Paragraph 5 above, which shall include: a detailed, written statement discussing and describing the exceedances, the possible cause(s) and/or source of the exceedances, additional measures designed to address and eliminate the problem and future exceedances, and an expeditious time line for implementing said additional measures (the "Action Plan"). The Action Plan shall be provided to Baykeeper no later than thirty (30) days after HWMA's receipt of the sample results demonstrating two exceedances of Table 1 Concentrations in accordance with Paragraph 5.

**17.        Baykeeper Review of Action Plan(s).** Baykeeper may review and comment on an Action Plan and suggest any additional pollution prevention measures it believes are appropriate within thirty (30) days of receipt of any Action Plan; however, Baykeeper's failure to do so shall not be deemed to constitute agreement with the proposals set forth in the Action Plan. HWMA shall not be obligated to perform any of the pollution prevention measures Baykeeper may recommend (subject to dispute resolution in Paragraphs 24 and 25), but shall give good faith consideration to those measures, and provide a written explanation as to why HWMA declined to implement those additional pollution prevention measures. Upon request by Baykeeper, HWMA agrees to meet and confer in good faith regarding the contents and sufficiency of the Action Plan.

**18.        Additional Measures.** After receipt and consideration of any comments from Baykeeper on the Action Plan, HWMA shall implement the additional measures specified under the Action Plan

within the timeline set forth in the Action Plan, unless an extension is approved by Baykeeper. Within thirty (30) days of implementation of the additional measures, the Facility's SWPPP shall be amended to include all additional BMP measures designated in the Action Plan.

19. **Site Inspection.** In addition to the site inspection conducted as part of the settlement process, HWMA shall permit representatives of Baykeeper to perform one (1) physical inspection at the Facility during the term of this Agreement. This inspection may be performed by Baykeeper's counsel and/or consultants and may include sampling, photographing, and/or videotaping. All water quality sampling shall be conducted by a qualified sampler, with a split sample provided to both Parties at the time of sampling. Baykeeper shall provide HWMA with a copy of all sampling reports, photographs, and/or video within a reasonable time after the site inspection, not to exceed fourteen (14) days after Baykeeper's receipt of any sampling reports from split samples, and seven (7) days after the site inspection for photographs and/or video. Baykeeper shall provide at least two (2) business days' advance notice of such physical inspection, except that HWMA shall have the right to deny access if circumstances would make the inspection unduly burdensome and pose significant interference with business operations or any party/attorney, or the safety of individuals. In such case, HWMA shall specify at least three (3) dates within the two (2) weeks thereafter upon which a physical inspection by Baykeeper may proceed. HWMA shall document any alterations to the Facility conditions related to storm water management made during the period between receiving Baykeeper's initial advance notice and the start of Baykeeper's inspection. The documentation shall include the date the alterations related to storm water management were planned and/or scheduled, the date of the issuance of any purchase order and/or maintenance order, if any, for the alterations, and the date the alterations were implemented. Nothing herein shall be construed to prevent HWMA from continuing to implement any BMPs identified in the SWPPP or to add additional BMPs and modify the SWPPP accordingly during the period prior to an inspection by Baykeeper or at any time.

20. **HWMA's Communications with Regional Board and State Water Board.** After the Effective Date and during the Term of this Agreement, HWMA shall provide Baykeeper with copies of all documents and communications submitted to the Regional Board or the State Water Board concerning BMPs, storm water, or storm water discharges from the Facility and compliance with

Industrial Storm Water Permit or the Clean Water Act related to this Facility, or shall provide notice that these documents have been uploaded to the Storm Water Multiple Application and Report Tracking System ("SMARTS"). These documents and communications shall include, but are not limited to, all documents and reports submitted to the Regional Board and/or State Water Board as required by the Industrial Storm Water Permit, and all correspondence between the Regional Board or the State Water Board and HWMA or their agents related to this Facility. Such documents and reports shall be provided to Baykeeper pursuant to the Notice provisions of Paragraph 42 herein on the same day as HWMA's transmission or uploading of said documents to the Regional Board or the State Water Board.

### MITIGATION, COMPLIANCE MONITORING, FEES, AND COSTS

21.     **Mitigation Payment.** As mitigation of the Clean Water Act violations alleged in Baykeeper's Complaint, HWMA agrees to pay the sum of $27,500.00 to the City of Eureka for the Elk River Estuary and Inter-tidal Wetlands Enhancement Project. The mitigation payment shall be made directly to the City of Eureka within seven (7) calendar days of the Effective Date, with a copy of the check sent to Baykeeper.

22.     **Baykeeper's Litigation Fees and Costs.** To partially reimburse Baykeeper for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating, filing the lawsuit and complaint, prosecuting the case, and negotiating settlement, HWMA shall pay a total of one hundred thousand dollars ($100,000.00). The payment shall be made within thirty (30) days of the Effective Date. The payment shall be made via check, made payable to: "ATA LAW GROUP," and delivered: ATA Law Group, 828 San Pablo Ave., Ste. 115B, Albany, CA 94706.

23.     **Compliance Monitoring.** Defendant shall pay seven thousand, five hundred ($7,500.00) per year, for a total of twenty-two thousand, five hundred ($22,500.00) for the life of this Agreement, to fund Baykeeper's costs of monitoring and overseeing HWMA's submittals to Baykeeper under this Agreement. Three equal payments shall be made on or before **January 15, 2018**; **January 15, 2019;** and **January 15, 2020**. HWMA's checks shall be made payable to: "ATA LAW GROUP," and delivered to: ATA Law Group, 828 San Pablo Ave., Ste. 115B, Albany, CA 94706.

**DISPUTE RESOLUTION**

**24.**   **Jurisdiction of the Court.** The Court shall retain jurisdiction over this matter for the life of the Agreement for the purposes of enforcing, interpreting, or modifying its terms and conditions, and adjudicating disputes among the Parties that may arise under the provisions of this Agreement. The Court shall have the authority to enforce or modify this Agreement, upon motion by one of the Parties, with all available legal and equitable remedies.

**25.**   **Meet and Confer Requirements.** If a dispute under this Agreement arises, a modification of the Agreement is requested, or the Parties believe that a breach of this Agreement has occurred, the Parties agree to first meet and confer:

**25.1**   A Party to this Agreement may invoke the dispute resolution procedures of this Section by notifying the other Parties of the matter(s) in dispute. The Parties shall schedule a meet and confer (either telephonically or in person) within ten (10) days from the date of the notice. The Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

**25.2**   If the Parties fail to meet and confer, or cannot resolve a dispute through the informal meet and confer process, either Party shall be entitled to all rights and remedies under the law, including filing a motion with the District Court of California, Northern District, which shall retain jurisdiction pursuant to Paragraph 24 for the Term of this Agreement.

**25.3**   The Parties in any dispute shall be entitled to seek fees and costs incurred during any dispute resolution procedure pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, (e.g., 33 U.S.C. §§ 1319, and 1365(d), the Federal Rules of Civil Procedure, and applicable case law interpreting those provisions.

**MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

**26.**   **Baykeeper's Waiver and Release.** Baykeeper, on its own behalf and on behalf of its officers, directors, members, employees, parents, subsidiaries, agents, representatives, and attorneys, and each of their successors and assigns, releases HWMA, their officers, directors, shareholders, employees, members, parents, subsidiaries, successors or assigns, agents, attorneys, and other representatives, from and waives all claims raised in the 60-Day Notice and the Complaint, without limitation, including all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of

attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed, or that could have been claimed, for matters included in the 60-Day Notice and the Complaint up to the Court Approval Date.

27.    **HWMA's Waiver and Release of Baykeeper.** HWMA, on their own behalf and on behalf of their officers, directors, shareholders, employees, members, parents, subsidiaries, affiliates, successors or assigns, agents, attorneys and other representatives, releases Baykeeper and its officers, directors, employees, members, parents, subsidiaries, agents, attorneys, representatives, affiliates, and each of their successors and assigns, from and waives all claims that arise from or pertain to, the 60-Day Notice and the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or that could have been claimed for matters included in the 60-Day Notice and the Complaint up to the Court Approval Date.

28.    **Baykeeper's Covenant Not to Sue.**  For the period beginning on the date of mutual execution of this Agreement and ending on the Termination Date of this Agreement, Baykeeper agrees that neither Baykeeper, its officers, executive staff, members of its governing board, nor any organization under the control of Baykeeper will file any lawsuit against HWMA seeking relief for alleged violation(s) of the Clean Water Act or violation of the Industrial Storm Water Permit at the Facility. If no Action Plan pursuant to Paragraphs 5 and 16 of this Agreement is required during the 2019-2020 reporting year, and if HWMA collects and analyzes samples from four (4) QSEs from the Facility for all parameters identified in Table 1 at all sampling points identified the Facility's SWPPP during the 2019-2020 reporting year, the terms of this Paragraph shall be extended for a period of eighteen (18) months, and shall survive the termination of this Agreement.

29.    **Waiver of California Civil Code § 1542.** Upon the Effective Date of this Agreement, the Parties further expressly waive any rights or benefits available to them under the provisions of California Civil Code § 1542. The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

While a Party may assert that California Civil Code section 1542 applies to general releases only, and that the releases in Paragraphs 267-8 are limited releases, the Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the Notice Letter and/or the Complaint, up to and including the Termination Date of this Agreement.

**MISCELLANEOUS PROVISIONS**

**30.    No Admission of Liability.** The Parties enter into this Agreement for the purpose of avoiding prolonged and costly litigation. Neither this Agreement, the implementation of additional BMPs or any payment pursuant to the Agreement shall constitute or be construed as a finding, admission, or acknowledgement of any fact, law, rule, or regulation. HWMA maintains and reserves all defenses to any alleged violations that may be raised in the future.

**31.    Early Termination/Permit Status Modification.** If HWMA should cease or modify industrial operations at the Facility and file a Notice of Termination ("NOT") or other notification under the Industrial Storm Water Permit prior to the Termination Date of this Agreement, HWMA shall send Baykeeper a copy of the proposed NOT or notice on the same day as its submittal to the Regional Board. Within ten (10) days of the Regional Board's approval of the NOT or other modification, HWMA shall notify Baykeeper in writing of the approval. In the event a new successor or assign continues similar industrial operations at the site after an NOT and assumes responsibility for implementation of this Agreement pursuant to Paragraph 41, HWMA shall notify Baykeeper within ten (10) days of the transition.

**32.    Execution in Counterparts and Signatures.** The Agreement may be executed in one or more counterparts, which, taken together, shall constitute one original document. The Parties' signatures to this Agreement may be electronic or original, and whether transmitted by courier, mail, email, or facsimile, shall be deemed binding.

**33.    Construction.** The language in all parts of this Agreement shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Industrial Storm Water Permit, the Clean Water Act, or specifically herein. The captions and Paragraph headings used in this Agreement are for reference only and shall not affect the construction of this Agreement.

**34.    Authority to Sign.** The undersigned representatives for the Parties certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Agreement, which have been read, understood and agreed to.

**35.    Integrated Agreement**. All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Agreement are contained herein.  This Agreement was made for the sole benefit of the Parties, and no other person or entity shall have any rights or remedies under or by reason of this Agreement, unless otherwise expressly provided for therein.

**36.    Severability.** In the event that any of the provisions of this Agreement are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

**37.    Choice of Law.** This Agreement shall be governed by the laws of the United States or, where applicable, the laws of the State of California.

**38.    Full Settlement.** This Agreement constitutes a full and final settlement of this matter.

**39.    Negotiated Agreement.** The Parties have negotiated this Agreement, and agree that it shall not be construed for or against any Party preparing it, but shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty and ambiguity shall not be interpreted against any one party.

**40.    Modification of the Agreement.** This Agreement, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by each of the Parties and order of the court.

**41.    Assignment.** Subject only to the express restrictions contained herein, all of the rights, duties and obligations contained in this Agreement shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

**42.    Notice.** Unless otherwise stipulated to by the receiving party, any notices or documents required or provided for by this Agreement or related thereto that are to be provided to Baykeeper pursuant to this Agreement shall be sent via electronic mail to the email addresses listed below:

Jennifer Kalt, Director
Humboldt Baykeeper
415 I St.
Arcata, CA 95521
(707) 825 1020
jkalt@humboldtbaykeeper.org

Anthony M. Barnes
Aqua Terra Aeris Law Group LLP
828 San Pablo Ave., Ste. 115B
Albany, CA 94706
Phone: (415) 326-3173
Email: amb@atalawgroup.com

Any notices or documents required or provided for by this Agreement or related thereto that are to be provided to HWMA pursuant to this Agreement shall be sent via electronic mail to the email addresses listed below:

Jill Duffy
Executive Director
HWMA
1059 West Hawthorne St.
Eureka, CA 95501
jduffy@hwma.net

Nancy Diamond
Attorney at Law
822 G Street, Suite 3
Arcata, CA 95521
Phone: (707) 826-8540
ndiamond@ndiamondlaw.com

Melissa Thorme
Downey Brand LLP
621 Capitol Mall, 18th Fl.
Sacramento, CA 95814
Phone: (916) 520-5376
mthorme@downeybrand.com

Each Party shall promptly notify all other Parties of any change in the above-listed contact information.

43.     **Force Majeure.** No Party shall be considered to be in default in the performance of any of its obligations when a failure to perform is due to a "Force Majeure." A Force Majeure event is any circumstances beyond the Party's reasonable control, including, without limitation, any act of God, war, fire, earthquake, tsunami, extraordinary high tides, flood, and restraint by court order or public authority. A Force Majeure event does not include normal inclement weather, such as anything less than or equal to a storm intensity equivalent to a 100 year/24-hour storm event, or inability to pay (except in the case where rates cannot legally be raised to pay for costs associated with this Agreement). Any Party seeking to rely upon this Paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the Force Majeure.

The Parties hereto enter into this Agreement on the terms set forth herein.

//

//

//

//

APPROVED AND AGREED:

Dated: _Nov. 10_, 2017       By: _[signature]_
                                 Jennifer Kalt, Director
                                 Humboldt Baykeeper

Dated: _Nov. 9_, 2017        By: _[signature]_
                                 Heidi Messner, Acting Chair of the Board
                                 Humboldt Waste Management Authority


APPROVED AS TO FORM

                             AQUA TERRA AERIS LAW GROUP

Dated: November 10, 2017     By: _[signature]_
                                 Anthony M. Barnes
                                 Attorneys for Humboldt Baykeeper


                             DOWNEY BRAND LLP

Dated: _11/10_, 2017         By: _[signature]_
                                 Melissa A. Thorme
                                 Attorneys for HWMA